**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELOISA CHAPARRO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 11 C 2659** |
| **v.** | ) | |
| | ) | |
| **CITY OF CHICAGO, ILLINOIS,** | ) | **Judge John J. Tharp, Jr.** |
| **BRIAN RONEY, and RON** | ) | |
| **BONADURER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Eloisa Chaparro, a Chicago police officer, brought this suit against two fellow officers, Brian Roney and Ron Bonadurer, her supervisor, Sergeant James Washburn, and the City of Chicago, asserting sexual harassment and sex discrimination, among other claims, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. Previously, this Court (Holderman, J.) granted in part and denied in part the defendants' motions to dismiss. Dkt. 46. Sergeant Washburn was dismissed from the suit. The only remaining claims in this case are: (1) equal protection under § 1983 against Brian Roney in his individual capacity; (2) equal protection under § 1983 against Ron Bonadurer in his individual capacity; (3) equal protection under § 1983 against the City; and (4) sexual harassment under Title VII against the City. The remaining defendants filed separate motions for summary judgment. Although the evidence is sufficient to establish that defendants Roney and Bonadurer routinely engaged in juvenile, sexually oriented conduct that has no place at work (or anywhere else, for that matter), the Court is constrained to conclude that Ms. Chaparro cannot prevail on her remaining legal claims and that the motions for summary judgment must be granted.

# I.    BACKGROUND

## A. Chaparro's Local Rule 56.1(b)(3) Response and Statement of Additional Facts.[1]

The Court must first address Chaparro's failure to comply with Northern District of Illinois Local Rule 56.1, which provides litigants with instructions and procedures for properly filing and responding to motions for summary judgment. Rule 56.1(b) requires:

> a concise response to the movant's statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and ... a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

N.D. Ill. L.R. 56.1(b)(3)(A)-(C). As the defendants correctly point out, Chaparro has failed to comply with these requirements. Her responses to the defendants' statements of fact include inaccurate citations to the record, the absence of any citations to the record, and general denials without any support. "[A] district court is entitled to expect strict compliance with rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Any statements of fact offered by a defendant and not properly responded to by Chaparro are deemed admitted to the extent they are supported by admissible record evidence. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

In addition, the Court will disregard paragraphs 4-5, 15, 20-23 in Chaparro's statement of additional facts, which rely on an affidavit which she attaches as an exhibit to her submission. *See* Dkt. 150-2; *see* Pl.'s Stmt. ¶¶ 4-5, 15, 20-23. That affidavit contradicts Chaparro's

---

[1] The Court assumes that Chaparro's submission titled "Plaintiff's Amended Rule 56.1(B)(C) Statement of Undisputed Facts" (Dkt. 150) is intended as a Local Rule 56.1(b)(3)(C) Statement of Additional Facts.

deposition testimony. For example, Chaparro testified that she heard Roney and Bonadurer make inappropriate comments between 20 and 50 times (Pl.'s Dep. (Dkt. 115-1) at 92:6-93:2, 109:4-12), but she could only recall four specific incidents for each defendant and added that nothing would refresh her memory at the time. *Id.* at 94:9-14 ("I'm sure there were [more comments], but I don't remember verbatim."); 105:11-16 ("I'm sure that there [are] times that I haven't told you because I can't remember the exact dates or times."); 108:7-14 ("I can't think of any [more comments] right now, but I know there were some."); 112:5-18 ("Q: Are you able to list [Bonadurer's] comments? A. Not right now.").

The Seventh Circuit "ha[s] been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995). Where deposition testimony and an affidavit are in conflict, the affidavit is to be disregarded "unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Id.* at 67-68; *see also United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars,* 730 F.3d 711, 718 (7th Cir. 2013) ("we do not allow litigants to manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony."). Chaparro makes clear in her deposition that she cannot recall additional comments or incidents of harassment, and told the questioner that nothing at the time would refresh her memory. It is unclear, and Chaparro provides no explanation, as to why Chaparro is now able to recall additional incidents but could not do so at her deposition. That omission is particularly problematic given that she has now added to the inventory more incidents than she offered during her deposition (this is not a case where a witness neglected to mention a single incident) and the alleged incidents involved

graphic conduct by the defendants which she now purports to recall clearly. The purpose of discovery is to narrow the issues and give the opponent an opportunity "to secure information about the existence of evidence that may be used at trial …" 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2001 (3d ed. 2014). Chaparro did not provide the defendants with the opportunity to discover the additional incidents she now recalls before summary judgment, and because of this unexplained discrepancy, the affidavit and the statements of fact that rely on the affidavit will be disregarded.

Finally, any additional facts submitted without leave of court in excess of the 40 allowed by Local Rule 56.1 (which was not requested) are stricken and have also been disregarded.

## B. Undisputed Material Facts[2]

Eloisa Chaparro has been employed by the Chicago Police Department ("CPD") since 1988. Pl.'s Resp. to City's 56.1 Stmt. (Dkt. 140-3) ¶ 2.

In 2003, Chaparro joined the Tech Lab, which is part of the CPD's Organized Crime Division. *Id.* ¶ 4. At the time, the Tech Lab included about a dozen police technicians and police officers performing the duties of technicians. *Id.* ¶ 9. Chaparro fell into the latter category; she held the title of Police Officer, but she performed the duties of a technician. *Id.* ¶ 4. Roney and Bonadurer were both police technicians during the relevant time period; they had no authority to hire, fire, promote, demote, transfer or discipline other members of the Lab, including Chaparro. *Id.* ¶¶ 5-7. Sergeant James Washburn was in charge of the Tech Lab from 2007 until 2012. *Id.* ¶ 8.

---

[2] The following undisputed facts are taken from the parties' Local Rule 56.1 statements. Disputed facts are noted. All inferences have been drawn in favor of the non-movant, Plaintiff Chaparro. *See Keeton v. MorningStar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

The Tech Lab provides technical services to the Organized Crime Division and forensic video services to the Detective Division. *Id.* ¶ 9. More specifically, Tech Lab employees provides technical support for consensual overhears (court-authorized eavesdropping), wiretaps, surveillance vans, and GPS tracking devices. *Id.* ¶ 10. Tech Lab employees also retrieve and duplicate video evidence of robberies, homicides, kidnappings, and other crimes. *Id.* Chaparro testified at her deposition that a "part of [her] job" was coming across gruesome scenes, including naked bodies, but that she had never come across sexually explicit images as part of her job. *Id.* ¶ 3; Pl. Dep. (Dkt. 115-1) at 52:23-53:3. She further testified that she was a "tough cookie" and "thick skinned." Pl.'s Resp. to Def. Bonadurer's 56.1 Stmt. (Dkt. 140-2) ¶ 50.

The Tech Lab contains a media room for copying evidence, a communal refrigerator, and computers that were, at least at the time, used by all Tech Lab employees and were not password protected. *Id.* ¶¶ 11-12. The Tech Lab was also open to other CPD personnel and cleaning staff. Pl.'s 56.1 Resp. to City ¶ 13.

Chaparro testified at her deposition regarding the following facts in support of her claims:

- From 2008 until 2010, Chaparro's colleague, Brian Roney, made approximately 20 to 50 lewd remarks in Chaparro's presence. Specifically, Chaparro testified that she overheard Roney make the following statements: (1) "Did you cum in her stomach? Did you cum in her breasts?"; (2) "I let her sit on my face"; (3) "I'm cuming"; and (4) "I like her tits." Chaparro did not report any of Roney's alleged comments until October 2009.

- Chaparro's colleague Ron Bonadurer made approximately 50 comments in Chaparro's presence. Specifically, Bonadurer (1) pretended to grab his penis in response to one of Roney's comments; (2) said "I can give you a black ball" when someone came into the Tech Lab to ask for a black ball lamp post used for video surveillance; (3) said "big tits, uh-huh" in response to Roney's comment about a woman's breasts; and (4) grabbed a measuring stick and put it up to his crotch. Chaparro testified that Bonadurer would "play off of" Roney and "would ride along with Roney." Chaparro did not report any of Bonadurer's alleged comments until October 2009.

- One day during the spring of 2009, Chaparro saw a label with the word "dildo" printed on it attached to the communal refrigerator in the Tech Lab. Chaparro does not know

who put the label on the refrigerator (hereafter "The Refrigerator Incident"). Chaparro did not report this incident until October 2009.

- One day during the summer of 2009, Roney told Chaparro that a video of a "police shooting" had come in to the Tech Lab. Roney walked with Chaparro to the media room, where two officers were viewing a VHS tape depicting a woman performing fellatio. Chaparro watched the video for "a couple seconds." Roney laughed, after which Chaparro left the room visibly upset (hereafter "The Video Incident"). Roney later apologized to her. In general, Tech Lab employees do not know the contents of the videos they are assigned to retrieve. Chaparro did not report this incident until October 2009.

- On October 8, 2009, a sergeant gave Bonadurer a media card and requested that pictures be transferred to a CD. Chaparro followed Bonadurer to a computer "to see what kind of evidence they got." Either Bonadurer or Chaparro touched the computer mouse and an image of "a guy standing with his pants down" and his "penis … sticking out" appeared on the computer's wallpaper. Chaparro had the impression that Bonadurer "thought the image on the computer was kinda funny." Chaparro returned to her desk, where she overheard Bonadurer in another room telling a couple of male officers to "[p]ull your pants down" and "[m]aybe it was you." Chaparro concedes that she does not know who placed the image on the computer and further agrees that Bonadurer did not know who placed the image on the computer, either (hereafter "The Wallpaper Incident").

Pl.'s Resp. to Def. City's 56.1 Stmt. ¶¶ 23, 26-29, 31-37, 42-43; Pl.'s Resp. to Def. Bonadurer's 56.1 Stmt. ¶¶ 21, 46.

Chaparro testified that she complained to Sergeant Washburn about the Wallpaper Incident the day it occurred. Pl.'s Resp. to Def. City's 56.1 Stmt. ¶¶ 38-39. Washburn was out of the office, and told Chaparro that she could speak to another supervisor if she needed immediate attention; she did not speak to anyone else, however. *Id.* ¶¶ 40. Five days later, Chaparro and Washburn met and Chaparro told Washburn about "what happened over the summer with Roney" and about the Refrigerator Incident. *Id.* ¶ 42. Chaparro testified that Washburn told her that he would "talk to the guys" and that he would "keep her name out of it." *Id.* ¶ 44. Washburn met with each Tech Lab employee individually and told them that the complained-of behavior would not be tolerated and reprimands would result if similar behavior came to his attention again. *Id.* ¶ 45. Approximately one week after the interviews, Washburn met with Chaparro a

second time to follow-up regarding her complaints. *Id.* ¶ 46. Washburn said that there was an inappropriate wallpaper picture on an employee's computer and that the complained-of video was evidence that Tech Lab employees were required to review (notwithstanding its offensive character). *Id.* ¶¶ 46-47.

The evidence regarding Washburn's desire to file a formal complaint with the CPD's Internal Affairs Division is mixed. Chaparro testified that Washburn told her that he did not want to report her complaint to the Internal Affairs Division because it would "bring a bad light to our unit." *Id.* ¶ 44. Chaparro admitted in her deposition, however, that her notes from her second meeting with Washburn indicate that Washburn told Chaparro that filing a formal complaint was "the right thing to do" and asked her to "[t]hink about it and let [him] know." *Id.* ¶ 47. In a third meeting with Washburn, on or about October 27, 2009, Chaparro stated that she did not want to pursue a formal complaint. *Id.*[3] Rather than initiate an IAD investigation, then, Washburn took the following actions: (1) he restricted access to the back rooms of the Tech Lab, (2) he informed all Tech Lab employees that no outsiders were allowed in the back rooms, and (3) he held a meeting with all Tech Lab employees to, according to the defendants, discuss the contents of the CPD's equal employment opportunity policy (Chaparro claims that sexual harassment was not discussed at the meeting, however). *Id.* ¶ 48-50. Chaparro admits that Roney and Bonadurer's conduct ended after she complained to Washburn and that she did not overhear any more sexual remarks or jokes, or see any more nude or inappropriate images or videos, in the Tech Lab. *Id.* ¶

---

[3] Chaparro asserts in her response to the City's 56.1 Statement that she contacted the Internal Affairs Division on October 14, 2009, regarding her allegations of sexual harassment, but there is no source cited to support this assertion. Rather, it is undisputed that on October 19, 2009, Chaparro filed a charge of discrimination alleging only that she was denied a promotion to the position of Police Technician. *Id.* ¶ 19, 54. It is also undisputed that the October 19, 2009, charge is not at issue in the instant lawsuit. *Id.*

52. Chaparro testified, however, that she received "[t]he cold shoulder" from her colleagues, "became invisible," and experienced "total silence" when she entered a room. *Id.* ¶¶ 62-63.

On November 3, 2009, the CPD's Internal Affairs Division initiated an investigation into unrelated allegations that Chaparro was wrongfully denied a promotion. *Id.* ¶ 53. Chaparro's complaints about Roney and Bonadurer were later made a part of that investigation. *Id.* ¶ 54. During the course of the IAD investigation, Chaparro reported the following additional alleged facts:

- Chaparro's CPD-assigned car was defaced with a drawing of a penis while it was parked in front of her house. The same car was defaced with a similar drawing while it was parked in the garage at the building in which the Tech Lab is located. Chaparro does not know who drew the images on her car. The timing of the incidents is uncertain, but it appears that they allegedly occurred after Chaparro complained to Washburn.

- Chaparro found a wooden toy gun on her desk in the Tech Lab. Chaparro does not know who placed the toy gun on her desk.

*Id.* ¶¶ 57-59. Internal Affairs completed its investigation on October 13, 2011, and recommended a reprimand for Bonadurer and other employees, and a two-day suspension for Washburn, for not properly reporting the Wallpaper Incident. *Id.* ¶¶ 60-61.

On December 18, 2009, Chaparro filed a charge with the EEOC against the City of Chicago for sex discrimination in violation of Title VII. *Id.* ¶ 20. As of July 2013, Chaparro was still an employee of the Tech Lab but she has been on medical leave since 2010 for a back injury. *Id.* ¶ 67.

## II.    ANALYSIS

"Summary judgment is appropriate if the evidence demonstrates that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013) (quoting Fed. R. Civ. P.

56(a)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A party "may move for summary judgment by showing ... that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 325) (internal quotation marks omitted). To survive summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The City of Chicago moves for summary judgment on Count VI (Title VII hostile work environment) and Count III (§ 1983 sexual harassment, discrimination, and retaliation). Roney and Bonadurer move for summary judgment on Count I (§ 1983) and Count II (§ 1983), respectively.

## A. Title VII Hostile Work Environment

The City argues that Chaparro's Title VII claim fails because Chaparro cannot establish that the alleged conduct amounted to an actionable hostile work environment, among other reasons. To establish a claim for hostile work environment based on sexual harassment, a plaintiff "must present evidence from which a jury could reasonably conclude that she was (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her gender; (3) that were severe or pervasive enough to create hostile work environment; and (4) that there is a basis for employer liability." *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 604 (7th Cir. 2006). The City does not argue that Chaparro has failed to establish that she was subjected to unwelcome sexual conduct, but contends that she has failed to create a triable issue of fact as to the remaining elements.

### 1. Only some of the alleged conduct was arguably because of Chaparro's gender.

9

Although the City does not contest that Chaparro was subjected to unwelcome sexual conduct while working in the Lab, it does contend that the alleged behavior by Roney and Bonadurer was not due to Chaparro's gender. Sexually inappropriate conduct that is inflicted without regard to the gender of the recipient is "outside [Title VII]'s ambit." *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000). Put another way, "[h]arassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex." *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996) (noting that a prime facie case of sexual harassment requires a showing that "but for the plaintiff's sex, he or she would not have been the subject of harassment."). The mere fact that comments, gestures, and conduct relate to sex does not mean that those acts constitute sexual harassment. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 410-11 (7th Cir. 1997). It is perhaps an unfortunate fact of modern life that crudity, vulgarity, and lewdness are seemingly ubiquitous; that one must endure uncouth boors in the workplace is also unfortunate, but sexually-oriented vulgarity does not constitute sexual harassment unless it is directed at the recipient *on account of* the recipient's gender. Title VII does not prescribe etiquette; it proscribes discrimination based on one's gender. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII is not a code of civility).

Most of the conduct alleged by Chaparro falls directly into this category—comments and conduct that were inflicted without regard to gender. Most of the conduct occurred while other employees, and in particular male employees, were present; indeed, the record reflects that *Chaparro* was not "present"—in the sense of being in the presence of the speakers—when many of the lewd comments that offended her were made. *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (no hostile work environment where comments made outside of plaintiff's

presence); *Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (same). Rather, Chaparro acknowledges that she simply overheard a number of those comments—made by men to other men—while working elsewhere in the Lab. Is it appropriate to engage in vulgar, sexually-oriented banter in the workplace? No, but neither is it discriminatory; such banter offends without regard to gender. Similarly, an offensive picture posted on a communal refrigerator, or on a computer screen, offends *without discrimination* as to the gender of those who happen upon it. Where male and female employees are both exposed to a colleague's conduct, or "where the conduct complained of is equally offensive to male and female workers," sexual harassment is not based on gender "because men and women are accorded like treatment …." *Holman*, 211 F.3d at 403. Even if some of the officers' comments and conduct were directed to Chaparro specifically, as she asserts, that fact does not necessarily establish that they were directed toward her *because of* her gender. *See Johnson*, 125 F.3d at 412 (even if taunts have a "sexual component, as do most expletives, the crucial point is that the 'harasser' was not aiming expletives at the victim *because of the victim's maleness*") (emphasis in original). If Roney liked to talk openly and in graphic terms about his sexual proclivities to his male colleagues, and did so regularly, as the evidence sufficiently establishes, what basis is there to conclude that he was making such comments on account of Chaparro's gender when he directed them to her? In short, the record reflects that Roney and Bonadurer were "equal opportunity harassers." *See Holman*, 211 F.3d at 404 (holding that Title VII does not provide a remedy when both sexes are treated badly because Title VII is predicated on discrimination).

Although it is plain that Roney and Bonadurer engaged in most of the conduct about which Chaparro complains because they were boorish louts, rather than on account of Chaparro's gender, not all of that conduct falls into the lout category as a matter of law. Specifically,

Chaparro alleges several episodes as to which a juror could rationally infer that Roney and Bonadurer (or others) were targeting Chaparro specifically because she was a woman. For example, Chaparro alleges that Roney "lured" her to the media room to watch a police shooting video, which turned out to be a video depicting a woman performing fellatio, and laughed during the incident. Another example is the two incidents in which someone—Chaparro does not know who—defaced her car with drawings depicting a penis. This is not to say that a juror could not rationally conclude that these acts were the product of boorishness rather than Chaparro's gender, just that reasonable minds could differ with respect to whether these specific episodes occurred "because" Chaparro is a woman.

### 2. The alleged conduct was not severe or pervasive.

Unfortunately for Chaparro, even assuming that a jury could conclude that these specific acts—the Video Incident and the car drawings[4]—were motivated by her gender, her harassment claim would fail because these episodes do not amount to conduct sufficiently severe or pervasive to "rise to the level of an actionable hostile work environment." *Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2011). To be actionable, the harassing conduct must have "altered the conditions of her employment such that it created an abusive working environment." *Id.* Further, "the work environment must be both objectively and subjectively offensive …." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (internal quotations omitted); *see also E.E.O.C. v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012) ("We also

---

[4] The Court is not considering the additional incidents alleged by Chaparro as part of this analysis because there is not an adequate basis to conclude that they occurred "because of" Chaparro's gender; as such, they cannot be used to establish that Chaparro was subjected to "severe or pervasive" harassment. *See, e.g., Pelnarsh v. R.R. Donnelley & Sons Co.*, 348 Fed. Appx. 178, 181 (7th Cir. 2009) (not reaching severe or pervasive analysis because alleged comments were not "because of [the plaintiff's] gender" as required by Title VII).

assess the impact of the harassment … from both a subjective and objective viewpoint, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."). Additional factors include "the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." *Passananti*, 689 F.3d at 667. "Offhand comments, isolated incidents, and simple teasing do not rise to the level of" a hostile work environment. *Id.* Rather, "[t]he workplace that is actionable is one that is 'hellish.'" *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7th Cir. 1997).

First, the Court will assume that Chaparro has shown a factual dispute as to whether she was subjectively offended by Roney and Bonadurer's conduct. Although Chaparro testified that she handled "gruesome" cases as a police officer, that "part of her job" was coming across images of naked bodies, and that she was "a tough cookie" and "thick skinned," she has at least created a dispute on this issue. *See* Pl. Dep. at 52:4-6, 20-22, 52:23-53:3, 145:15-17. Chaparro's deposition testimony indicates that she was clearly personally bothered by Roney and Bonadurer's conduct, and that although she did not officially complain to Sergeant Washburn until October 2009, she complained to Roney and Bonadurer directly many times. *See, e.g.*, Pl.'s Dep. at 96:11-23; 102:6-18 (describing feeling of being bullied and constant attempts to stop the conduct). Based on this Court's reading of Chaparro's deposition testimony, the Court finds that Chaparro has created a fact dispute as to her level of subjective offense.

As to objective offense, however, on the record before this Court, a reasonable person likely would not have found these three episodes to create a hostile work environment within the meaning of Title VII. The Video Incident was singular; it happened one time and it never happened again, and Chaparro acknowledges that Roney apologized to her afterward. The car

13

drawings occurred twice, outside of the Lab, and Chaparro concedes that she does not know who was responsible for them. The incidents were episodic, not an "incessant barrage," *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1997); Chaparro's exposure was brief, and none of the episodes was particularly "physically threatening or humiliating" or severe enough to "interfere[] with" Chaparro's work performance.[5] *Passananti*, 689 F.3d at 667. *See, e.g., Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) (act of vandalism to employee's car, which occurred just after she filed an EEOC charge and received notice of disciplinary action held not sufficient to survive summary judgment on employee's retaliation or hostile work environment claim); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) ("The occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable.") (internal quotations and citation omitted); *see also Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) (holding that a handful of comments of a sexual nature, in the context of jokes, and not serious or threatening comments, does not rise to the level of actionable harassment).

This is particularly true given the nature of Chaparro's employment and workplace, as a technician in a crime lab in which employees were routinely exposed to subject matter that in other work places would be shocking and offensive. *See Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999) (stating that "sporadic use of abusive language, gender-related jokes, and occasional teasing are fairly commonplace in some employment settings and do not amount to actionable harassment"); *see also Coolidge v. Consol. City of Indianapolis*, 505 F.3d 731 (7th

---

[5] Chaparro speculates that the toy gun may have been placed on her desk as a form of a threat (Pl.'s Resp. to City (Dkt. 134) at 12), but there is no basis for such an inference where the evidence establishes that this item had been knocking around the Lab for some time (Pl. Dep. at 346:8-22); and there is no evidence about who put the toy there, when it was placed there, or that any other threatening conduct occurred.

Cir. 2007) (holding that leaving pornographic videotapes in police Crime Lab did not create actionable hostile work environment in part because pornography did not have same shocking overtones in Crime Lab where corpses were regularly viewed compared to other settings). Similarly, Chaparro was often exposed to images that would be inappropriate in a different work setting, but in the environment of the Tech Lab, were relatively pedestrian.

### 3. There is no basis for employer liability.

Even had Chaparro adduced evidence sufficient to create a jury issue as to gender-based conduct sufficiently severe or pervasive to create a hostile work environment, her claim would still fail because she cannot establish a basis for the City's liability with respect to that environment. The record is clear, and Chaparro does not dispute, that she did not report any of Roney's or Bonadurer's objectionable conduct until October 2009. When she did report it, Washburn, her supervisor, took prompt action to investigate and to remedy the problem. "Once aware of workplace harassment, the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Vance v. Ball State Univ.*, 646 F.3d 461, 471 (7th Cir. 2011) (internal quotations and citation omitted). A "prompt investigation is the hallmark of reasonable corrective action." *Id.* at 473. Because Roney and Bonadurer were not Chaparro's supervisors, the City can be held liable for their conduct only if Chaparro proves that the City was "negligent either in discovering or remedying the harassment." *Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 383 (7th Cir. 2012) (adding that an employer is negligent "if it does not promptly and adequately respond to [the] harassment."). Further, what is a reasonable response depends on the gravity of the harassment; the more serious the harassment, the more drastic and immediate should be the employer's response. *Id.* at 383.

Here, Chaparro maintains that "it is only fair to assume" that Washburn knew about Roney and Bonadurer's harassment given his "close proximity" in the Lab, Pl.'s Resp. to City, Dkt. 134, at 11, but surviving summary judgment requires evidence, not assumptions. Moreover, Chaparro concedes elsewhere in her response to the City's motion that "[p]lainly, the burden is on the aggrieved employee to complain about the actions that have created the hostile workplace." *Id.* at 8 (citing *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 976 (7th Cir. 2004)). She also concedes that she did not complain about the conduct of Roney and Bonadurer for more than a year. And it is undisputed that once Chaparro complained to Sergeant Washburn on October 8, 2009, the City was on notice and took immediate and concrete action appropriate to the conduct about which Chaparro complained. Upon hearing from Chaparro about her complaints, Sergeant Washburn spoke to her by telephone, met with her three times, interviewed each member of the Tech Lab individually, restricted access to three rooms in the Tech Lab, and held a meeting to discuss the contents of the CPD's EEO policy. Pl.'s 56.1 Resp. to City ¶¶ 39, 42, 44-45, 48, 50. Chaparro acknowledges that Washburn's actions "ended the abuse in the Tech Lab itself," (Pl.'s Resp. to City (Dkt. 134) at 12], but points to the drawing incidents as evidence that Washburn's actions were not enough. But those were two additional incidents, that did not occur in the Lab, and which were not reported to Washburn. Chaparro reported them to IAD during its investigation, they were investigated, and there were no other incidents. The Deputy Chief of the Organized Crime Division circulated a memo directing supervisors to review the contents of the CPD EEO policy with their subordinates. *Id.* ¶ 50. The CPD Office of Legal Affairs investigated Chaparro's claims and recommended discipline for several Tech Lab employees; Bonadurer received a reprimand and Washburn received a two-day suspension. *Id.* ¶¶ 54, 60, 61. The CPD found that Chaparro's complaints against Roney were unfounded. *Id.* ¶

61. Once it was on notice, the City took prompt and appropriate action that matched the extent of the complained-of conduct. The Court finds that these steps were reasonably likely to stop the alleged conduct (and did, as Chaparro concedes), which is what Title VII requires. *See Vance*, 646 F.3d at 473.[6]

Chaparro, then, has failed to present a factual question as to whether she endured a hostile work environment. She has not presented evidence from which a jury could reasonably conclude that the majority of the conduct was because of her gender and that the arguably gender-based conduct was sufficiently severe or pervasive, and she further cannot show that there is a basis for employer liability with respect to the conduct that actually constituted sexual harassment. With three of the four *Erickson* elements lacking, Chaparro's claim for sexual harassment under Title VII fails at summary judgment.

## B. Section 1983

The Equal Protection Clause of the Fourteenth Amendment prohibits a state or local government employer from engaging in sexual harassment of an employee. *See Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). Section 1983 provides the remedy for victims of this type of discrimination. *See Valentine v. City of Chicago*, 452 F.3d 670, 682 (7th Cir. 2006). Section 1983 actions require two showings: (1) the violation of a constitutional right and (2) that the alleged deprivation was committed by a person acting under color of state law. *See Trautvetter*, 916 F.2d at 1148.

---

[6] The City also maintains an Equal Employment Opportunity Policy, prohibiting sexual harassment, which was distributed to Chaparro sometime before 2009. Pl.'s 56.1 Resp. to City ¶¶ 15, 18. The existence of an anti-harassment policy helps to establish that an employer exercised reasonable care to prevent sexual harassment. *See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 811-12 (7th Cir. 1999) (employer exercised reasonable care to prevent sexual harassment, especially apparent by its specific and detailed anti-harassment policy).

## 1. City of Chicago[7]

Chaparro brings a § 1983 claim against the City of Chicago under the theory that the City has a custom or practice of "sex discrimination, sexual harassment and retaliation." First Am. Compl. ¶¶ 28-42. The conduct of Roney and Bonadurer is not legally part of this equation; rather, "units of local government are responsible only for their policies rather than misconduct by their workers." *See Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009); *Chortek v. City of Milwaukee*, 356 F.3d 740, 749 (7th Cir. 2004) (the "discretionary decisions of an employee without policymaking authority" do not establish § 1983 liability). To succeed on this claim, Chaparro must show that the City (1) has an express policy that caused a constitutional deprivation, (2) has a widespread practice of discrimination that is so permanent and well-settled that it constitutes a custom or usage, or (3) that Chaparro's injury was caused by a person with final policy-making authority. *Chortek*, 356 F.3d at 748.

Taking each alternative in order, first, the City, of course, does not have an express policy promoting sexual discrimination or harassment; rather, it has an express policy *prohibiting* sexual harassment. *See* Note 6, *supra.* Second, Chaparro's personal experiences and her recollection of one additional individual who complained of sexual harassment (Pl. Dep. at 46:19-47:5) do not evidence a widespread practice of discrimination. Chaparro has not shown, as

---

[7] In addition to a Section 1983 claim against the City pursuant to the Equal Protection Clause of the Fourteenth Amendment, the City responds to Chaparro's purported § 1983 retaliation claim. Chaparro briefly refers to retaliation in Count III of her First Amended Complaint, and offered in her deposition that three events occurred after she complained to Sergeant Washburn: twice someone drew an image of a penis on her car and someone left a toy gun on her desk. The City is correct that a claim for retaliation can be brought solely under Title VII or the First Amendment, and not the Equal Protection Clause. *See Boyd v. Ill. St. Police*, 384 F.3d 888, 898 (7th Cir. 2004). Therefore, the City is also entitled to summary judgment in its favor on any § 1983 retaliation claim raised by Chaparro. To the extent Chaparro also raises a retaliation claim against Roney and Bonadurer under § 1983, Roney and Bonadurer are entitled to summary judgment for the same reason.

is required, that there was "some knowledge or an awareness–actual or imputed–of the custom and its consequences showing the municipality's approval, acquiescence, or encouragement of the alleged unconstitutional violation." *Jones v. City of Chi.*, 787 F.2d 200, 204 (7th Cir. 1986). Chaparro offers no evidence of approval, acquiescence, or encouragement by the City; again, to the contrary, the undisputed evidence shows that when more senior officials learned of the conduct about which Chaparro complains, they took prompt and effective action to put an end to it and to discipline those involved. Further, Chaparro's complaints relate to two potential harassers and a handful of examples. *Valentine*, 452 F.3d at 685 (insufficient evidence of a widespread practice where plaintiff complains of only one harasser and two supervisors). Finally, by statute, the City Council and the Commissioner of the Department of Human Resources are the only final employment policymakers for the City. *See Waters*, 580 F.3d at 581 (citing Ill. Municipal Code § 2-74-050). Chaparro does not offer any evidence that her alleged injuries were caused by one or both of these entities.

Since Chaparro has failed to adduce any evidence at all of a City policy or practice promoting sex discrimination or harassment, her Section 1983 claim against the City fails.

### 2.  Roney and Bonadurer

For Roney or Bonadurer to be liable under § 1983, Chaparro must show that the officers deprived her of a federally guaranteed right while acting "under color of state law." *Valentine,* 452 F.3d at 682; *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). An act occurs under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Valentine*, 452 F.3d at 682 (quotation marks and citation omitted); *Hughes*, 880 F.2d at 971 (same). The fact that Roney and Bonadurer were employed by the City of Chicago, however, is not enough.

Actions by a police officer are not under color of state law unless those actions are in some way "related to the performance of police duties." *Hughes*, 880 F.2d at 972; *see, e.g., Mainor v. Chicago Trans. Auth.*, 2005 WL 3050604, at *5 (N.D. Ill. Nov. 15, 2005) (holding that alleged sexual harassment was not related to the duties and powers related to the defendant's position and bore no relation to any state powers assigned to the defendant, so it could not have occurred under color of state law); *Murphy v. Chicago Tran. Auth.*, 638 F. Supp. 464, 467-68 (N.D. Ill. 1986) (CTA staff attorneys did not act under color of state law when they sexually harassed plaintiff; "the CTA job ... did not and could not give the illusion that sexual harassment, albeit during work hours, somehow related to the nature of that job"). While some of Roney and Bonadurer's conduct was arguably related to their assigned duties in the Lab,[8] the "under color of state law" requirement in the sexual harassment context generally also includes a requirement that the defendant has some measure of authority over the plaintiff. *See Woodword v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992) (collecting circuit courts of appeal cases); *see also Valentine*, 452 F.3d at 683 (holding that defendants acted under color of state law because they were the plaintiff's supervisors and had the power to control the circumstances of plaintiff's employment). Roney and Bonadurer were not Chaparro's supervisors; there is no evidence that they were anything but her equals in the Tech Lab and none of the incidents about which she complains appears to have arisen because Chaparro was under any obligation to follow their directives.

---

[8] The Video Incident, for example, occurred while other officers, and theoretically Roney, were reviewing a video to determine if it contained evidence. The Wallpaper Incident occurred while Bonadurer was tasked with transferring pictures to a CD using a Tech Lab computer.

The defendants do not address this issue in their submissions, however, so the Court will not advance it for them. No matter. To establish liability under § 1983 for sexual harassment, Chaparro must establish the same categories of evidence as under Title VII—that she was subjected to unwelcome sexual conduct, because of her gender, and that the conduct was severe or pervasive enough to create a hostile work environment. *See Singh v. Town of Mount Pleasant, Steinhauer v. DeGolier, 359 F.3d 481,* 483 (7th Cir. 2004) (same standards apply to intentional sex discrimination claims brought under Title VII and § 1983); *Hildebrandt v. Ill. Dep't of Nat. Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003) ("the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims") (internal quotation marks omitted); *McPhaul v. Bd. of Com'rs of Madison Cnty.*, 226 F.3d 558, 566 n.6 (same hostile environment standard applies to Title VII and § 1983 claims). As to these categories, the Court discussed above that although Chaparro may present a factual question as to whether a few of the offensive acts by the defendants were "because of" her gender, that evidence falls short, as a matter of law, of establishing that the defendants' conduct was severe or pervasive enough to create a hostile work environment. Accordingly, Chaparro's § 1983 claims against Roney and Bonadurer also fail.

*       *       *

For the reasons set forth above, the City of Chicago's Motion for Summary Judgment [107] is granted, Ron Bonadurer's Motion for Summary Judgment [101] is granted, and Brian Roney's Motion for Summary Judgment [104] is granted. This case is dismissed in its entirety and terminated.

Entered: June 12, 2014

_____

John J. Tharp, Jr.

United States District Judge